**UNITED STATES of America**

v.

**Steven L. PARSON, Appellant.**

**No. 91–3059.**

United States Court of Appeals, Third Circuit.

Argued June 13, 1991.

Decided Jan. 31, 1992.

**860**

Joseph Grey (argued), Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for appellant.

William C. Carpenter, Jr., U.S. Atty., Carolyn T. Greene (argued), Asst. U.S. Atty., Wilmington, Del., for appellee.

Before BECKER and ALITO, Circuit Judges, and HUYETT, District Judge.[*]

## OPINION OF THE COURT

BECKER, Circuit Judge.

The defendant-appellant, Steven Parson, pled guilty to a charge of possession with intent to distribute cocaine base, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (1988). The district court determined that Parson was a career offender under United States Sentencing Guidelines ("U.S.S.G.") §§ 4B1.1 and 4B1.2(1), which substantially increased his sentence. The court based its determination of career offender status on Parson's separate Delaware convictions for second degree conspiracy and first degree reckless endangering. Parson admits that the second degree conspiracy charge was a proper predicate for career offender status.

He vigorously contends, however, that the 1984 reckless endangering conviction under 11 Del.Code Ann. § 604 (Michie 1987) (subsequently amended) was not a proper predicate because it was not a "crime of violence" under U.S.S.G. §§ 4B1.1 and 4B1.2(1).

The district court concluded that the reckless endangering conviction was a "crime of violence" under both parts of the definition in U.S.S.G. § 4B1.2(1). Parson claims that the district court plainly erred in finding his conduct a "crime of violence" under the first part of the Guideline definition, U.S.S.G. § 4B1.2(1)(i), because use of force is not an element of first degree reckless endangering under Delaware law. He further submits that the district court erred under the second part of the definition, U.S.S.G. § 4B1.2(1)(ii), either by considering first degree reckless endangering categorically a "crime of violence" or by deeming his actual conduct a "crime of violence" without allowing him to introduce evidence controverting the facts in his Presentence Investigation ("PSI") Report. More specifically, based on the legislative history of the term "crime of violence," beginning with the original definition of that term in 18 U.S.C. § 16 (1988), Parson argues that only (1) crimes involving specific intent to use force or (2) crimes that entail a substantial risk of intentional use of force may qualify as "crimes of violence." In his view, convictions such as his for "pure" recklessness crimes (ones that risk harm but involve no intent to cause harm) are insufficient to qualify as predicate offenses for career offender status and enhanced penalties.

For the reasons that follow, we will affirm. We do so despite our grave doubts about the wisdom of the Commission's extremely broad definition of "crime of violence," which is significantly more expansive than the original, congressional definition of "crime of violence" that excluded crimes not actually or potentially involving intentional use of force. Under the current

---

[*] The Honorable Daniel H. Huyett, 3rd, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

definition, crimes such as reckless driving and child endangerment, because they involve the serious risk of physical injury to another person, qualify as predicate offenses for career offender status. Accepting the Sentencing Commission's long-standing invitation to comment on the Guidelines, we note our view that career offender status should be reserved for more serious offenders, those who repeatedly intend to inflict harm. While no injustice is done on these particular facts, we urge the Commission to reconsider the career offender Guidelines insofar as they sometimes make a crime whose mens rea is no worse than recklessness into a predicate offense.

## I. FACTS AND PROCEDURAL HISTORY

Delaware police arrested Parson on November 30, 1989, after a high-speed car chase. He was held on a number of state charges, some arising from the car chase, the others relating to possession and distribution of crack cocaine. Delaware prosecuted Parson for the charges related to the car chase but referred the drug-related charges for federal prosecution pursuant to an unwritten understanding between the U.S. Attorney's Office and the Delaware Attorney General's Office that the federal authorities have the right of first refusal on investigations involving five or more grams of crack.

A federal grand jury indicted Parson on January 3, 1990, charging him with five counts of distributing crack cocaine in violation of 21 U.S.C. § 841(a)(1). A superseding indictment was returned on February 23, 1990, charging six counts, but, pursuant

to a plea agreement, on October 29, 1990, Parson pled guilty to one count of possession with intent to distribute cocaine base, and the government agreed, with the approval of the district court, to drop the five remaining counts charging distribution and conspiracy to distribute cocaine.

After Parson's guilty plea, the United States Probation Office prepared a PSI Report recommending that Parson be sentenced as a career offender under U.S.S.G. § 4B1.1 because of his earlier Delaware convictions for second degree conspiracy and first degree reckless endangering.[1] Parson filed objections which conceded that his conspiracy conviction was properly a predicate offense under the Guidelines but claimed that his 1984 reckless endangering conviction should not be considered a predicate "crime of violence."

The PSI Report was the district court's only record of the facts underlying the earlier reckless endangering conviction, and that report was based on a Delaware PSI Report prepared after Parson's 1984 guilty plea. Both the federal and underlying Delaware PSI reports recite that on February 14, 1984, Parson and three codefendants were confronted while shoplifting meat from a store, and that Parson "pushed and slapped" a store clerk as the four fled. The reports do not mention where the clerk was hit, the severity of the contact or the presence of weapons.

At the district court's sentencing hearing on January 4, 1991, Parson attempted to controvert the findings in the PSI Report. Specifically, he offered to testify that he was not the one who slapped the store clerk and that there was little likelihood of

---

1. The second degree conspiracy charge involved an incident in which Parson and a codefendant entered an apartment and, armed with a knife and gun, robbed the victim of $213 and an ounce of marijuana. Parson also has Delaware convictions for five counts of third degree burglary, one count of felony shoplifting, and two counts of misdemeanor theft. Although several of Parson's burglaries involved burglaries of dwellings, the government did not advance those crimes as predicate offenses. Three of the burglaries took place near the time of the first degree reckless endangering, and Delaware consolidated these crimes for sentencing even

though each was a separate incident. Under U.S.S.G. § 4A1.2, appl. note 3, those crimes were "related" because they were consolidated for sentencing, so that under U.S.S.G. § 4B1.2, appl. note 4, the consolidated group could only count as one prior conviction for purposes of the career offender Guideline, U.S.S.G. § 4B1.1. We are uncertain why the government, limited to choosing one of the crimes, chose the reckless endangering crime rather than one of the burglaries of dwellings, which would indisputably have been predicate "crimes of violence" under the express terms of U.S.S.G. § 4B1.2(1)(ii).

serious injury to the victim.[2] The district court refused to hear his testimony and proceeded to rule that the 1984 reckless endangering offense was a proper predicate for career offender status. Thus finding that Parson had two qualifying predicate crimes, the court classified Parson as a career offender. Because the parties disagree over what the district court relied upon in making this determination, we set out the court's oral ruling in full:

> It is my determination then that the defendant, Steven Parson[,] is a career offender pursuant to Guideline Section 4B1.1. He is over 18 years old. The present offense is a controlled substance offense, and he does have two prior felony convictions for what I find qualify as a crime of violence under 4B1.1 and 4B1.2.
>
> In making that determination ... I am not going to hold a mini-trial as to what occurred in that conviction involving reckless endangering, first degree. I am going to take the elements of that offense as they exist in the Delaware Code, namely, recklessly engaging in conduct which creates a substantial risk of death to another person, and I find that that offense fits within the definition of crime of violence both in sub-section (1) and sub-section (2) of Section 1 of 4B1.2.
>
> I note also in making that determination that the Delaware Sentencing Accountability Commission has classified reckless endangering first degree as a violent felony.

For those reasons I will classify the defendant as a career offender.

> Concerning the pre-sentence report, to the extent that it is taken into consideration, and I believe it is the type of hearsay that can be taken into consideration in a sentencing hearing, that does support my conclusion ... [T]here was [a] conviction of the defendant for that offense, [and] he was represented by an attorney at that time.

During the hearing, Parson requested a downward departure from the otherwise applicable Sentencing Guidelines on the theory that the manner by which his case was referred for federal prosecution violated his due process rights. Parson claimed that the charges against him were selectively referred for federal prosecution in a manipulation of the federal and state courts. The district court disagreed and declined Parson's request, noting as an aside that Parson's federal sentence might have been higher anyway had there been no separate state proceedings. The court then proceeded to impose a sentence of 210 months in prison, at the top of the range it found applicable.[3] This appeal followed.

## II. HISTORY AND VALIDITY OF THE CAREER OFFENDER GUIDELINE'S DEFINITION OF "CRIME OF VIOLENCE"

### A. *The Career Offender Guideline*

■ The district court sentenced Steven Parson as a career offender under U.S.S.G. § 4B1.1, which reads, in relevant part:

---

**2.** The first Application Note to U.S.S.G. § 4B1.2 makes clear that "'crime of violence' ... include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." Parson's proffer as to which of the four men slapped the clerk was therefore of questionable utility, although perhaps he desired to argue that he never intended to rough up the clerk and that hitting her was neither part of the plan nor a reasonably foreseeable event, such that he did not aid or abet the actual perpetrator or conspire to hit the clerk. As to the extent of force used and the potential injury, Parson's theory is clear: he wanted to argue that his actual or imputed conduct did not "present[ ] a serious potential risk of physical injury" to the clerk, so could not have been a "crime of violence" under U.S.S.G. § 4B1.2(1)(ii).

**3.** Because Parson was deemed a career offender, his criminal history category was automatically VI, the highest. See U.S.S.G. § 4B1.1 (quoted in text at 863). Because the statutory maximum sentence for Parson's offense was between 20 and 25 years, see 21 U.S.C. § 841(b)(1)(C), Parson's offense level was 32, see U.S.S.G. § 4B1.1, but the district court exercised its discretion under U.S.S.G. §§ 3E1.1 and 4B1.1 to decrease the offense level by 2 levels to 30 because it found that Parson had accepted responsibility for his conduct. Under the Guidelines, the sentencing range was therefore 168–210 months, and the district court sentenced Parson to the maximum term in that range.

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

| Offense Statutory Maximum | Offense Level* |
|---|---|
| . . . | |
| (C) 20 years or more, but less than 25 years | 32 |
| . . . | |

* If an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by 2 levels.

Parson concedes that he meets all the qualifications for career offender status except one; he claims only that the government has shown but a single prior felony conviction for a "crime of violence." The primary issue we must decide, then, is whether Parson's 1984 Delaware conviction for first degree reckless endangering was a conviction for a "crime of violence" and hence a proper predicate for career offender status. Because the proper construction of "crime of violence" under the Guidelines is a question of law, our review is plenary. *United States v. McAllister*, 927 F.2d 136, 137 (3d Cir., cert. denied), — U.S. —, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991).

For purposes of the career offender Guideline, U.S.S.G. § 4B1.1, U.S.S.G. § 4B1.2(1) defines "crime of violence" as:

any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

The conviction at issue was for reckless endangering in the first degree, which, according to 11 Del.Code Ann. § 604, occurs when a person "recklessly engages in conduct which creates a substantial risk of death to another person." The government would have us affirm on the following theory: (1) because Parson pled guilty to first degree reckless endangering, he concededly "engage[d] in conduct which creates a substantial risk of death to another person," as the Delaware statute provides; (2) his conduct therefore necessarily "present[ed] a serious potential risk of physical injury to another" under U.S.S.G. § 4B1.2(1)(ii) (death being the most severe physical injury); hence (3) Parson's conviction was, by definition, for a "crime of violence." As we develop below, that logic is indeed sound, but it assumes that the Guideline definition of "crime of violence" is consistent with the underlying career offender statute and that the second prong of the Guideline definition covers "pure" recklessness crimes, two assumptions which Parson challenges. Accordingly, we must first trace the evolution of "crime of violence" as used in the career offender statute and the Sentencing Guidelines.

B. *Evolution of the Term "Crime of Violence"*

Congress created the Sentencing Commission and authorized it to promulgate sentencing guidelines and policy statements as part of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 217(a), 98 Stat. 1837, 2017–26 (relevant portion codified at 28 U.S.C. §§ 991–998 (1988)). See generally *Mistretta v. United States*, 488 U.S. 361, 363–69, 109 S.Ct. 647, 649–53, 102 L.Ed.2d 714 (1989). Section 994 of title 28 U.S.C. codifies the duties of the Commission and details the type and nature of the guidelines the Commission is to issue. Several subsections of section 994 are particularly relevant here.

In subsection 994(d), Congress instructed the Sentencing Commission to consider eleven attributes of defendants in estab-

lishing sentencing guidelines; most important here is the tenth, criminal history, see 28 U.S.C. § 994(d)(10). In this respect, Congress particularly wanted to ensure that recidivist violent and drug offenders received stiffer sentences, near the maximum term authorized for each crime, to remove such dangerous offenders from the streets and to deal more effectively with the growing problem of violent crime. That mandate was enshrined in subsection 994(h), which provides:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—
>
> (1) has been convicted of a felony that is—
>
> (A) a crime of violence; or
>
> (B) ... [a list of various drug-related crimes, including 21 U.S.C. § 841, under which Parson was convicted]; and
>
> (2) has previously been convicted of two or more prior felonies, each of which is—
>
> (A) a crime of violence; or
>
> (B) ... [the same list of drug-related crimes].

In the same vein, Congress in the very next subsection required that the sentencing guidelines provide a "substantial term of imprisonment" for a convicted defendant who "has a history of two or more prior Federal, state, or local felony convictions for offenses committed on separate occasions." 28 U.S.C. § 994(i)(1).

Nowhere in section 994 or elsewhere in the Sentencing Reform Act of 1984, Pub.L. No. 98–473, tit. II, ch. II, 98 Stat. 1837, 1987–2040, did Congress define "crime of violence." But that act was only Chapter II of the overall Comprehensive Crime Control Act of 1984, which also contained, as a separate Chapter X, "miscellaneous violent

crime amendments," 98 Stat. at 2136–43. There Congress did define the term:

> The term "crime of violence" means—
>
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, *by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.*

18 U.S.C. § 16 (emphasis added). The legislative history confirms that Congress meant for this definition to apply throughout the Comprehensive Crime Control Act of 1984. The Senate Report notes that

> [t]he term "crime of violence" is defined, for purposes of all of title 18, United States Code, in section 1001 of the bill [now 18 U.S.C. § 16].... Although the term is occasionally used in present law, it is not defined, and no body of case law has arisen with respect to it. However, *the phrase is commonly used throughout the bill, and accordingly the Committee has chosen to define it for general application in title 18.*

S.Rep. No. 98–225, 98th Cong., 1st Sess. 307 (1983), in 1984 U.S.C.C.A.N. 3182, 3486 (footnotes omitted; emphasis added).[4]

When adopting the career offender statute, 28 U.S.C. § 994(h), then, Congress had in mind the definition of "crime of violence" in 18 U.S.C. § 16. Section 4B1.2(1) of the Sentencing Commission's original 1987 Guidelines simply incorporated the definition of "crime of violence" in section 16 by reference. But effective November 1, 1989, the Commission adopted the revised definition of "crime of violence" quoted at page 864, for purposes of the career offender Guidelines. That definition is cur-

---

**4.** The quotation in the text is somewhat ambiguous and may only say that 18 U.S.C. § 16 applies across title 18, while the statute authorizing the Sentencing Commission to promulgate guidelines is codified in title 28. We think it clear, however, that Congress meant for the definition to apply throughout the entire Comprehensive Crime Control Act. See S.Rep. No. 98–225 at 304, 1984 U.S.C.C.A.N. at 3483 (section 1001 of the Act, 18 U.S.C. § 16, "defines the term 'crime of violence,' *used here and elsewhere in the bill*") (emphasis added).

rently in force.[5] See United States Sentencing Commission, *Guidelines Manual Appendix C* 110–11 (Nov. 1991) (text of amendment 268, including revisions from the earlier version of U.S.S.G. § 4B1.2(1)).

In revising the Guideline definition of "crime of violence," the Commission borrowed from the 1986 revision of the definition of "violent felony" in a firearms statute, 18 U.S.C. § 924(e)(2)(B). *Guidelines Manual Appendix C* at 111. The Commission revised the definition on the basis of 18 U.S.C. § 924(e)(2)(B) even though Congress's definition there was not only limited to that subsection, but was for the term "violent felony," and not for the term of art "crime of violence." [6] Although the Commission stated that its revision to the definition was only intended to clarify the terminology, *Guidelines Manual Appendix C* at 111, the literal words of the new Guideline definition of "crime of violence" changed the earlier definition in 18 U.S.C. § 16 in two crucial ways.

First, section 16 considers crimes against persons and property together in each of its two prongs. The first prong, subsection 16(a), covers crimes having actual, attempted or threatened use of physical force against a person or property as an element, while the second prong, 28 U.S.C. § 16(b), covers offenses that by their nature substantially risk the use of physical force against a person or property. In contrast, the language of revised U.S.S.G. § 4B1.2(1) never explicitly links the treatment of crimes against persons and crimes against property, and it might arguably be read to cover the two categories separately—crimes against persons in prong (i) and crimes against property in prong (ii).

The first prong of the Guideline definition, U.S.S.G. § 4B1.2(1)(i), includes only

actual, attempted or threatened use of physical force directly against *persons*. See also *United States v. McAllister*, 927 F.2d 136, 138 n. 2 (3d Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991) (definition in 18 U.S.C. § 16(a) identical to that in 18 U.S.C. § 924(e)(2)(B)(i), except that the former but not the latter includes use of force against property). Crimes aimed at taking or damaging *property*, such as burglary of a dwelling, arson, extortion, and the use of explosives, are listed in the second prong of the Guideline definition, U.S.S.G. § 4B1.2(1)(ii), and that prong does not enumerate any crimes necessarily involving or threatening force against persons, which are already covered in the first prong.[7] Of course, on this reading, the second prong still requires that predicate crimes present a serious risk of physical injury to a *person*, but the crimes themselves are directed in the first instance against *property*.

The plain words of U.S.S.G. § 4B1.2(1)(ii) thus might be read to provide that offenses that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another" include only crimes directed in the first instance against *property* in which harm directed against *persons* is an incidental (although reasonably likely) result. On the other hand, the "otherwise" clause could be read to include *all* crimes that involve a serious risk of injuring persons. This difference matters to Parson because the proposed predicate crime here (reckless endangering) was directed at the store clerk (a person), not the store (property).[8]

Second, whereas both prongs of the original definition in section 16 were written solely in terms of use of force, the revised

---

5. Because Parson's offense and sentencing both took place after November 1, 1989, the revised guidelines apply and pose no ex post facto problems.

6. In Part III.A we discuss the purpose and legislative history of 18 U.S.C. § 924(e), which began as part of the Armed Career Criminal Act of 1984, Pub.L. No. 98–473, tit. II, ch. XVIII, 98 Stat. 1837, 2185, yet another portion of the Comprehensive Crime Control Act of 1984.

7. Extortion can involve threats of force against persons or property. See note 15.

8. Parson was shoplifting at the time, which is a crime directed at property, but shoplifting does not inherently present a serious risk of physical injury to another person. In any event, Parson was not convicted of shoplifting in this incident, although he does have a shoplifting conviction involving a different incident.

definition in the current Guideline mixes "use of force" and "risk of physical injury" language. U.S.S.G. § 4B1.2(1)(i) retains the focus on "use of physical force": like the old definition, it categorically includes offenses having "as an element the use, attempted use, or threatened use of physical force." But the second branch of the definition in section 16 covered only felonies that "by nature, involve[ ] a substantial risk that physical force ... may be used," whereas the revised definition in the current Guideline's second prong covers conduct that "presents a serious risk of physical injury."

At first blush, the difference in phrasing appears trivial because most physical injury comes from the use of physical force. But the distinction is significant. Use of physical force is an intentional act, and therefore the first prong of both definitions requires specific intent to use force. As to the second prong of the original definition, a defendant's commission of a crime that, by its nature, is likely to require force similarly suggests a willingness to risk having to commit a crime of specific intent. For example, a burglar of a dwelling risks having to use force if the occupants are home and hear the burglar. In such a case, the burglar has a mens rea legally nearly as bad as a specific intent to use force, for he or she recklessly risks having to commit a specific intent crime.

In contrast, under the second prong of the revised definition, criminals whose actions merely risk causing physical injury may have a lower mens rea of "pure" recklessness: they may lack an intent, desire or willingness to use force or cause harm at all. For example, a parent who leaves a young child unattended near a pool may risk serious injury to the child, but the action does not involve an intent to use force or otherwise harm the child. Similarly, a drunk driver risks causing severe injury to others on the road or in the car, but in most cases he or she does not intend to use force to harm others.[9] In this case, the crime of reckless endangering necessarily involves a serious risk of physical injury to another person, but not necessarily an intent to use force against other persons.

### C. *Validity of the Broadened Guideline Definition of "Crime of Violence"*

■ The language of the revised Guideline definition of "crime of violence," then, is considerably different from the language that Congress chose. We must therefore decide whether the Sentencing Commission had the authority to deviate from the congressional definition in 18 U.S.C. § 16.[10] We conclude that the Commission has the power to expand the category of career offenders (although not to make it smaller), and that we must determine whether Parson's reckless endangering conviction was for a "crime of violence" under the current Guidelines rather than under 18 U.S.C. § 16.

In 28 U.S.C. § 994(h), Congress instructed the Commission to "assure" that the

---

9. Of course, most crimes involving drunk driving and child endangerment are not federal crimes, but under the career offender provisions, state crimes too may count as predicate offenses.

10. We could avoid deciding the question of the Sentencing Commission's power to deviate from the congressional definition if we decided that the Commission did not intend to alter the definition. Some support for such a holding comes from the Commission's statement that "[t]he purpose of this amendment is to clarify the definition[ ] of crime of violence ... used in this guideline." *Guidelines Manual Appendix C* at 111 (describing amendment 268). Similarly, the Commission has stated that the revised definition "substitute[d] [a] comparable but clearer definition[ ] of crime of violence...." 54 Fed Reg 9122, 9162 (1989).

Despite the Commission's pronouncements, we cannot consider the amendment as a clarification that made no changes to the definition in 18 U.S.C. § 16. Whatever the amendment's purpose, what it did was scrap the earlier cross-reference to 18 U.S.C. § 16 and replace it with a significantly different definition based on 18 U.S.C. § 924(e). See *Guidelines Manual Appendix C* at 110–11. The revised amendment, supplemented by revised Application Notes to U.S.S.G. § 4B1.2, may well have made the definition of "crime of violence" clearer than it had been under the earlier definition and accompanying Application Notes. But the amendment, although "comparable," also substantively modified the definition.

guidelines apply near-maximum terms to those convicted of certain drug crimes or "crimes of violence" (as defined in 18 U.S.C. § 16), and who had two previous convictions for "crimes of violence" or those drug crimes. Subsection 994(h) therefore required the Commission to give near-maximum terms to certain offenders; it did not by its terms prevent the Commission from deciding that others might also merit near-maximum terms. Moreover, the legislative history confirms that Congress intended subsection 994(h) as a floor for the career offender category, not as a ceiling. The Senate Report specifically noted that subsection 994(h) was "not necessarily intended to be an exhaustive list of types of cases in which the guidelines should specify a substantial term of imprisonment, nor of types of cases in which terms at or close to authorized maxima should be specified." S.Rep. No. 98–225, 98th Cong., 1st Sess. 176 (1983), in 1984 U.S.C.C.A.N. 3182, 3359.

We are also convinced that even if subsection 994(h) itself did not provide the authority for the current version of U.S.S.G. 4B1.2(1), other portions of section 994 provided the Commission with ample authority to adopt the revised definition. For example, subsection 994(d)(10) generally directs the Commission to take criminal history into account in establishing its guidelines. And subsection 994(i)(1) requires "substantial terms of imprisonment" for defendants previously convicted of two or more felonies committed on different occasions.[11] We therefore hold that even if the definition of "crime of violence" in U.S.S.G. § 4B1.2(1) is broader than that in 18 U.S.C. § 16, the Commission's definition is permissible under the authorizing statute.

## III. INTERPRETATION OF THE REVISED GUIDELINE

Having decided that U.S.S.G. § 4B1.2(1) is valid, we next must determine whether Parson's reckless endangering was a predicate "crime of violence" for purposes of the career offender Guideline, U.S.S.G. § 4B1.1.

### A. The Not–So–Plain Meaning of U.S.S.G. § 4B1.2(1)

For convenience we again set out the entire text of U.S.S.G. § 4B1.2(1):

The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.*

(emphasis added). We must decide whether Parson's conviction was for a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another" under prong (ii) of this definition.[12]

As discussed earlier, the Commission's revised definition of "crime of violence" drew upon the definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B). For clues as to the Commission's intended definition, Parson accordingly suggests that we turn to the legislative history of 18 U.S.C. § 924(e)(2)(B). We emphasize now, how-

---

**11.** As we read the entirety of section 994, the Commission could unquestionably have adopted the substance of its amendment using different terminology. Thus, while the Commission may not have been best advised to change the definition of the term of art "crime of violence," see Part IV, for us to invalidate the Guideline on that ground would be unduly formalistic.

**12.** First degree reckless endangering under Delaware law does not, as prong (i) of the definition requires, include *as an element* the actual,

attempted or threatened use of force against another person. See 11 Del.Code Ann. § 604 (crime consists of "recklessly engag[ing] in conduct which creates a substantial risk of death to another person"). The district court held that Parson's crime was a "crime of violence" under *both* prongs of the definition in U.S.S.G. § 4B1.2(1). As to prong (i), the district court erred, but because we conclude that the district court was correct with respect to prong (ii), that error was harmless.

ever, for it will later be important, that our job is to determine the *Commission's* intent when revising U.S.S.G. § 4B1.2(1). We only look at *Congress's* earlier intent when adopting subsection 924(e)(2)(B) as an indicator of the *Commission's* intent. Just as the Commission was empowered to deviate from the original definition of "crime of violence" in 18 U.S.C. § 16, so it may—and, as we hold, did—adopt a different scheme from that which Congress intended in 18 U.S.C. § 924(e)(2)(B).[13]

### 1. The Congressional Intent Behind the Definition of "Violent Felony" in Subsection 924(e)

Subsection 924(e) is aimed at *armed* career criminals. See generally *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In 18 U.S.C. § 922(g), Congress prohibited felons, fugitives, and drug abusers (among others) from shipping, transporting or receiving firearms or ammunition in interstate or foreign commerce. Subsection 924(e)(1) now requires a minimum 15-year sentence and a fine of up to $25,000 for violators of 18 U.S.C. § 922(g) who also have three prior convictions for "violent felonies" or "serious drug offenses," each defined in 18 U.S.C. § 924(e)(2). But when first adopted as part of the Armed Career Criminal Act of 1984 (another chapter of the Comprehensive Crime Control Act of 1984, see note 6), subsection 924(e) had a narrower list of predicate offenses. Only convictions for burglary and robbery, both specific intent offenses posing high risks of violence, counted toward the mandatory minimum sentence provision. See Pub.L. No. 98–473, tit. II, § 1802, 98 Stat. 1837, 2185 (1984) (repealed by Pub.L. No. 99–308, § 104, 100

Stat. 449, 456–59 (1986)). See also H.R.Rep. No. 98–1073, 98th Cong. 2d Sess. 1–6, in 1984 U.S.C.C.A.N. 3661, 3661–66 (describing the original provisions).

In 1986, Congress broadened the predicate crimes for armed career offender status to include other "violent felonies" and "serious drug offenses," as part of the Career Criminals Amendments Act of 1986, Pub.L. No. 99–570, § 1402, 100 Stat. 3207–39, 3207–39 to –40. The brief House Report on the bill explained the drafting process in the House Judiciary Committee and itself suggests that the prongs of the definition in section 924(e) distinguish personal and property crimes:

> The Subcommittee on Crime held a hearing on May 21, 1986 to consider whether it should expand the predicate offenses (robbery and burglary) in existing law in order to add to its effectiveness. At this hearing a consensus developed in support of an expansion of the predicate offenses to include serious drug trafficking offenses under both State and Federal law and violent felonies, generally. This concept was encompassed in H.R. 4885 by deleting the specific predicate offenses for robbery and burglary and adding as predicate offenses State and Federal laws for which a maximum term of imprisonment of 10 years or more is prescribed for manufacturing, distributing or possessing with intent to manufacture or distribute controlled substances and violent felonies under Federal of State law if the offense has an element the use, attempted use or threatened use of physical force against a *person*. This latter provision would include such felonies involving physical

---

**13.** Of course, because of the congressional command that the Commission "assure" that certain offenders be treated as career criminals, 28 U.S.C. § 994(h), the Commission's definition of "crime of violence" may not be narrower than the definition appearing in 18 U.S.C. § 16. See note 18.

Even though the intentions of the Commission and Congress may not have been identical, we think it important to discuss the legislative history of subsection 924(e)(2)(B) for two reasons. First, Parson has a not insubstantial argument that the congressional definition of "vio-

lent felony" in subsection 924(e)(2)(B) does not cover his offense. Second, as we will explain below, the Commission may well have been unaware of the legislative history behind the ambiguous definition in subsection 924(e)(2)(B). Because in Part IV we suggest that the Commission reconsider its definition of "crime of violence," we think it important to flag for the Commission's benefit the text and legislative history of *both* congressional definitions, that of 18 U.S.C. § 16 and that of 18 U.S.C. § 924(e)(2)(B).

force against a person such as murder, rape, assault, robbery, etc.

The other major question involved in these hearings was as to what violent felonies involving physical force against *property* should be included in the definition of "violent" felony. The Subcommittee agreed to add the crimes punishable for a term exceeding one year that involve conduct that presents a serious potential risk of physical injury to others. This will add State and Federal crimes against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person. It is the Committee's belief that this will improve the armed career criminal concept while at the same time preserve a strong concept of Federalism as well as an appreciation for the relative law enforcement resources available at the State and Federal levels.

H.R.Rep. No. 99–849, 99th Cong. 2d Sess. 3 (1986) (emphasis in the original).

The report also contained a section-by-section analysis of the bill (HR 4885), which also suggests that the drafters intended to distinguish personal and property crimes. The relevant section reads:

*Subsection 2(b)(B)* defines the term[ ] "violent felony" which is the other general term substituted for the specific predicate offenses of robbery and burglary.

*Subsection 2(b)[ ( ]B[ ) ](i)* adds all State and Federal felonies (imprisonment for a term exceeding one year) involving physical force against a person (e.g., murder, rape, assault, robbery, etc.) as predicate offenses under the bill.

*Subsection 2(b)(B)[ ( ]ii[ ) ]* adds all State and Federal felonies against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person.

Id at 4–5 (italics in the original). See also *Taylor v. United States*, 495 U.S. 575, 578–80, 110 S.Ct. 2143, 2147–48, 109 L.Ed.2d 607 [Part II] (1990) (extensively discussing legislative history of entire definition of "violent felony").[14]

Arguably, then, the first prong of the definition now in 18 U.S.C. § 924(e)(2)(B) addresses crimes against persons, and the second prong covers crimes against property. While the second prong of subsection 924(e)(2)(B) includes crimes "otherwise involv[ing] conduct that presents a serious potential risk of physical injury," "otherwise" might have referred only to other crimes that are directed at obtaining or damaging *property* but that still risk serious injury to *persons*.[15] Parson's best argument, then, is that his reckless endangering conviction does not fall under *either* prong of the definition in 18 U.S.C. § 924(e)(2)(B): because the Delaware reck-

---

**14.** The version of H.R. 4885 favorably reported by the Committee lacked the phrase "is burglary, arson, or extortion, involves use of explosives, or otherwise" at the beginning of the second prong. Evidently, the Committee always intended to include those property crimes, but originally did not feel it necessary to list them. The late addition of the quoted phrase led to the circuit split over the definition of "burglary" that the Supreme Court resolved in *Taylor*.

Many courts have noted the basic distinction between personal and property crimes in the legislative history (although not necessarily the text) of subsection 924(e)(2)(B). See, for example, *United States v. Leonard*, 868 F.2d 1393, 1395–97 (5th Cir.1989); *United States v. Sherbondy*, 865 F.2d 996, 1007–09 (9th Cir.1988); *United States v. Taylor*, 864 F.2d 625, 628–29 (8th Cir.1989) (Bright dissenting), vacated, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *United States v. Headspeth*, 852 F.2d 753, 758

(4th Cir 1988); *United States v. Coble*, 756 F.Supp. 470, 474 (E.D.Wash.1991). Some of these opinions defined "burglary" in a manner with which the Supreme Court later disagreed in *Taylor*, but the Court's own decision in *Taylor* quoted the legislative history that suggests the personal/property crimes distinction.

**15.** Not only does the legislative history support this reading, but so does the canon of statutory interpretation *ejusdem generis*, which says that courts should interpret legislatively provided examples as typical of the general category covered. Here 18 U.S.C. § 924(e)(2)(B)(ii) lists burglary, arson, extortion, and use of explosives—all crimes aimed at harming or obtaining property. Of the listed crimes, extortion is the only one necessarily involving another person (the recipient of the threat), but even there the threat may be to harm the property, not necessarily the person, of another.

less endangering statute does not include physical force as an element of the crime, prong (i) is not met, and because his crime was directed against a person, not property, prong (ii) is not met.[16]

On the other hand, although the crimes listed in subsection 924(e)(2)(B)(ii) are all crimes directed against property, it need not follow that the "otherwise" clause is restricted to property crimes. As we suggested at page 869, a plain reading could suggest that the "otherwise" clause includes *all* crimes seriously risking injuring persons, whether directed at persons or property in the first instance. Most of the reported prong (ii) cases deal with property crimes, typically burglary and attempted burglary. But the Ninth Circuit has held that the "otherwise" clause can cover crimes directed against persons. See *United States v. O'Neal*, 937 F.2d 1369 (9th Cir.1991) (vehicular manslaughter is a "violent felony" under subsection 924(e)(2)(B)(ii)); *United States v. Sherbondy*, 865 F.2d 996, 1007–09 (9th Cir.1988).

### 2. *Coextensiveness of the Definitions of Predicate Crimes Under Subsection 924(e)(2)(B) and Guideline 4B1.2(1)*

Fortunately, we need not decide this difficult question of statutory interpretation. For present purposes, we can assume that Parson's crime was not a "violent felony" under 18 U.S.C. § 924(e)(2)(B). Parson concludes that because his crime was not a predicate crime under subsection 924(e)(2)(B), his crime was also not a predicate crime under the similar language of U.S.S.G. § 4B1.2(1). There we disagree, for although U.S.S.G. § 4B1.2(1) was "based on" 18 U.S.C. § 924(e), we conclude from the official Guidelines Commentary that the two definitions are not coextensive. Unlike U.S.S.G. § 4B1.2(1), the Guideline that we consider here, the armed career criminal Guideline added in 1990, U.S.S.G. § 4B1.4, adopts the definition of "violent felony" in 18 U.S.C. § 924(e) *in terms,* and its Application Note specifically cautions that "the definitions of 'violent felony' and 'serious drug offense' in 18 U.S.C. § 924(e)(2) are not identical to the definitions of 'crime of violence' and 'controlled substance offense' used in § 4B1.1 (Career Offender)...." U.S.S.G. § 4B1.4, appl. note 1.

The Sentencing Commission has told us, then, that the definitions in U.S.S.G. § 4B1.2(1) and 18 U.S.C. § 924(e)(2)(B) differ. We could conclude that the only difference is that Congress listed all burglaries, while the Commission limited the Guideline's coverage to burglaries of dwellings.[17] On that reading, the Commission would have carried over the rest of Congress's possible (and certainly somewhat

---

**16.** Parson himself argues the point somewhat differently. He says that the legislative history of subsection 924(e) evidences congressional intent to include only specific intent crimes. It is true that the statements during hearings on the bill focused on individual specific intent crimes. See generally *The Armed Career Criminal Act Amendments: Hearing Before the Subcommittee on Criminal Law of the Committee on the Judiciary, United States Senate,* 99th Cong. 2d Sess. (1986) (hearings on S. 2312); *Armed Career Criminal Legislation: Hearing Before the Subcommittee on Crime of the Committee on the Judiciary, House of Representatives,* 99th Cong., 2d Sess. (1986) (hearings on H.R. 4639 and H.R. 4768). But it is also true that the final language adopted includes crimes where specific intent to harm *persons* is not required. Because this is not an armed career offender case, we have no need to decide whether under subsection 924(e)(2)(B)(ii) specific intent to harm *property* is required.

**17.** The Commission probably added the qualifier "of a dwelling" to "burglary" in order to achieve greater continuity with its earlier definition based on 18 U.S.C. § 16. The first application note to the earlier version of U.S.S.G. § 4B1.2 interpreted 18 U.S.C. § 16 as follows:

[M]urder, manslaughter, kidnapping, aggravated assault, extortionate extension of credit, forcible sex offenses, arson, or robbery are covered by this provision. Other offenses are overed only if the conduct for which the defendant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. *Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.*

*1991 Guidelines Manual Appendix C* at 111 (amendment 268, including both old and new versions of the Guideline and Application Notes).

hidden) intent to distinguish personal and property crimes. But based on Application Note 2 to U.S.S.G. § 4B1.2, we must conclude that the Commission did not intend to carry over any congressional distinction between crimes directed against persons and crimes directed in the first instance against property.

■ At the time of Parson's sentencing, Application Note 2 read:

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth in the count of which the defendant was convicted involved use of explosives or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2, appl. note 2 (subsequently amended). As we recently explained in *United States v. John*, 936 F.2d 764 (3d Cir.1991), Application Note 2 reveals the Sentencing Commission's intent to establish three independent ways by which the government may prove that a defendant's past conviction was for a "crime of violence." The government may show that the crime: (1) is among those specifically enumerated in the application note; or (2) has as an element the actual, attempted or threatened use of physical force against a person; or (3) although neither specifically enumerated nor necessarily involving use of physical force against a person, nonetheless involved conduct presenting a serious risk of physical injury. *Id.* at 767.

In our view, Application Note 2 is crucial for another reason: its treatment of each of its three categories of predicate crimes reveals that the Commission either rejected or was unaware of any latent congressional distinction in 18 U.S.C. § 924(e)(2)(B) between crimes against persons and crimes against property. First, the application note lumps together all the enumerated crimes in one sentence, including crimes against both persons and property and making no distinction between the two types of crimes. Second, when portion (A) of the Application Note mentions offenses included because of a use-of-force element, it specifically limits that category to crimes "against the person of another." Third, and most important here, when portion (B) of the Application Note discusses the residual category (offenses neither enumerated nor by definition force-related, but still "by nature" presenting a serious risk of physical injury to other persons), it does not limit that category to property crimes.

We can envision two possibilities. Application Note 2 might suggest that the Commission was aware of the supposed congressional distinction between personal and property crimes and deliberately chose to employ it in a different way: the distinction between personal and property offenses matters only for "elementally" included offenses. Alternatively, and more likely, the Commission may have been understandably oblivious to the legislative history behind section 924(e), and hence to the nonobvious personal/property crime distinction that may or may not be present in that statute. If so, in Application Note 2 the Commission only included the "against the person of another" qualifier for the second, "elemental" category because that language appeared in the text of the Guideline, but as a general matter it did not intend a distinction between personal and property crimes.

■ Whichever is the case, Application Note 2 reveals that the Commission did not have in mind any personal/property crime distinction that the drafters of 18 U.S.C. § 924(e)(2)(B) might have had in mind—and that for the Commission the Guideline phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" applies to crimes directed in the first instance against both persons and property. Thus a crime can be a predicate "crime of violence" under U.S.S.G. § 4B1.2(1)(ii), even though it was directed at a person (not property), and even though it may not have been a "vio-

lent felony". as defined in 18 U.S.C. § 924(e)(2)(B).[18]

**B.** *Categorical Inclusion of Parson's Reckless Endangering Crime Within U.S.S.G. § 4B1.2(1)(ii)*

Having concluded that Parson's crime was not categorically *excluded* from the coverage of U.S.S.G. § 4B1.2(1)(ii), we must decide whether it was categorically *included* thereunder—that is, whether Parson's guilty plea to "recklessly engag[ing] in conduct which creates a substantial risk of death to another person," 11 Del.Code Ann. § 604, necessarily means that he was convicted of "conduct that presents a serious potential risk of physical injury to another" under U.S.S.G. § 4B1.2(1)(ii). Parson claims that despite his guilty plea in 1984, he did not in fact push and slap the store clerk, and that even if he did, she was not truly in danger of physical injury. The government suggests that because the language of the Delaware statute substantially tracks the language of the sentencing Guideline, we should not allow Parson to introduce evidence that his actual conduct did not constitute a "crime of violence."

■ As discussed in the previous section, in *John* we noted that the government may prove that a defendant's past conviction was for a "crime of violence" using any of three approaches. We held that when considering crimes covered under the first approach (crimes specifically enumerated in the Guideline or application note) or the second approach (crimes by definition requiring physical force), courts may not look through to the underlying conduct charged. 936 F.2d at 767–68. See also *United*

States v. McAllister, 927 F.2d 136 (3d Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991) (robbery is categorically a crime of violence, and district court erred in looking to nature of underlying conduct). But we also held in *John* that when considering crimes not covered by the first two approaches, U.S.S.G. § 4B1.2 through its Application Note 2 "clearly *permits* courts to examine the defendant's actual conduct to ascertain whether that conduct posed a sufficient potential risk of physical injury to another to elevate the crime to a 'crime of violence.'" 936 F.2d at 768 (emphasis added). See also id at 770 (sentencing court "may" inquire into underlying conduct in cases in the third category). Parson suggests that in this third category case we *must* look through to the underlying conduct charged and cannot rely on a per se approach. We hold, however, that where the language of the criminal statute so closely tracks the language of the Guideline that the defendant's conviction *necessarily* meets the Guideline standard, the district court need look no further than the statute and need not inquire into the underlying conduct charged.[19] That is the case here.

■ We agree with the government that although a per se approach based on the statute alone is not required in every case, see *John,* such an approach is generally preferable to inquiry into the facts of each case. The case law under both 18 U.S.C. § 924(e)(2)(B) and U.S.S.G. § 4B1.2(1) has preferred the use of categorical approaches relying only on the statutory definitions of crimes. See, for example, *Taylor v. United States,* 495 U.S. 575,

---

18. We also note that if any distinction between personal and property crimes made in 18 U.S.C. § 924(e)(2)(B) were carried over, the Commission would arguably have violated its statutory mandate in 28 U.S.C. § 994(h), which, as we noted at 866–67, establishes a floor under the category of career offenders. If U.S.S.G. § 4B1.2(1)(ii) applied only to crimes against property, U.S.S.G. § 4B1.2(1) as a whole would be less inclusive than the definition in 18 U.S.C. § 16. We decline to attribute to the Commission an intention to violate its mandate, especially when Application Note 2 to U.S.S.G. § 4B1.2 suggests that the Commission did not

intend to reduce the scope of the career offender Guidelines in any way.

19. We do not decide whether it would be *error* for a district court to look through to the underlying conduct charged in a case such as this. We merely hold that the district court's failure here to look through to Parson's underlying conduct was not error. Neither do we intimate any view as to the effect on *John* of the most recent amendments to Application Note 2 to U.S.S.G. § 4B1.2, which do not apply here because they took effect on November 1, 1991. See *Guidelines Manual Appendix C* at 253–54 (amendment 433).

600–02, 110 S.Ct. 2143, 2159–60, 109 L.Ed.2d 607 (1990) (examining the language and legislative history of section 924(e) and noting "the practical difficulties and potential unfairness of a factual approach"); *McAllister,* 927 F.2d at 138–39; *United States v. Preston,* 910 F.2d 81, 85 (3d Cir 1990), cert. denied, —— U.S. ——, 111 S.Ct. 1002, 112 L.Ed.2d 1085 (1991). Although we concede that these cases did not address crimes advanced by the government under the "otherwise ..." language of U.S.S.G. § 4B1.2(1)(ii) and of 18 U.S.C. § 924(e)(2)(B)(ii), we can think of no reason why the government should be *required* to prove the details of defendant's actual conduct. Here, for example, Parson pled guilty to "creat[ing] a substantial risk of death to another person," 11 Del. Code Ann. § 604, language nearly tracking the Guideline definition. If Parson did not wish to admit that conduct, then he should not have pled guilty in 1984; having been convicted of that conduct, Parson is not entitled to argue otherwise now.[20]

## C. *Conclusion*

We thus conclude that the district court properly applied a categorical approach in determining that Parson's reckless endangering was a predicate "crime of violence" under U.S.S.G. § 4B1.2(1)(ii) for purposes of the career offender Guideline, U.S.S.G. § 4B1.1. As a result, the court's refusal to hold a mini-trial on what actually happened during the 1984 incident was proper. Parson has no due process right to challenge the underlying facts in the Delaware and federal PSI Reports because those facts were immaterial. The district court should have expressly stated that it would not take the disputed facts into account, see F.R.Cr.P. 32(c)(3)(D), but that error was harmless.[21] We therefore uphold the district court's conclusion that Parson is a career offender. Because the district court correctly sentenced Parson according to the career offender Guideline, the judgment of sentence will be affirmed.[22]

---

20. Of course, we are well aware that Parson had no inkling in 1984 that his guilty plea to state reckless endangering charges would make such an important difference under federal sentencing guidelines that had yet to be enacted. Perhaps, if he had been amazingly prescient, he would not have pled guilty or would have been able to obtain a plea bargain for a lesser offense. Like Parson, we find it hard to understand how pushing and slapping the store clerk endangered her life, but by pleading guilty Parson (who was represented by counsel) chose to admit that he endangered the clerk's life.

21. Similarly harmless was the district court's error in relying on Delaware's own characterization of first degree reckless endangering as a violent crime. As we observed in *John* (which we note, in fairness to the district court, came down well after Parson was sentenced), "[s]tate or territorial definitions concerning the violent nature of particular crimes are irrelevant" to the proper determination of predicate crime status under the federal Sentencing Guidelines. 936 F.2d at 770 n. 4. Here the error made no difference because Parson's crime by definition constituted a "crime of violence" under U.S.S.G. § 4B1.2(1)(ii).

22. Parson also reiterates his contention that a federal-Delaware agreement to refer certain classes of drug cases for federal prosecution denied him due process and that, *as a remedy,* he was entitled to a downward departure from whatever Guideline range we conclude is prop-

er. Had Parson sought review of a discretionary refusal to depart downward from the Sentencing Guidelines, we would not have jurisdiction. *United States v. Denardi,* 892 F.2d 269, 271–72 (3d Cir.1989). But this claim is instead one based directly on the Due Process Clause of the Constitution, hence we have jurisdiction and exercise plenary review. See *United States v. Furst,* 918 F.2d 400, 408 (3d Cir.), cert denied, 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990).

As noted in Part I, Parson's arrest-related charges were prosecuted in state court, while the drug-related charges were left for federal prosecution. This division was apparently pursuant to an unwritten agreement between the U.S. Attorney's Office and the Delaware Attorney General's Office that gives the U.S. Attorney's Office the right of first refusal on investigations involving five or more grams of cocaine. In Parson's view, the federal and state court systems were manipulated to increase the time he would serve in jail. Like virtually every court to consider such claims, we find no due process violation and hence no need for a remedial departure from the otherwise applicable Sentencing Guidelines. See, for example, *United States v. Andersen,* 940 F.2d 593, 595–96 (10th Cir.1991); *United States v. Turpin,* 920 F.2d 1377, 1387–88 (8th Cir.1990), cert. denied as *Williams v. United States,* —— U.S. ——, 111 S.Ct. 1428, 113 L.Ed.2d 480 (1991); *United States v. Frankel,* 739 F.Supp. 629, 630 (D.D.C. 1990); *United States v. Smith,* 727 F.Supp. 1023, 1024–25 (W.D.Va.1990).

## IV.  A SUGGESTION FOR THE COMMISSION

Since the promulgation of the initial Guidelines, the Sentencing Commission has made a concerted effort to solicit from federal judges their view about the efficacy and propriety of the Guidelines with which they deal.  This policy reflects the Commission's recognition of the fundamentally evolutionary nature of the sentencing guidelines scheme.  The Commission was charged not only with developing an initial set of guidelines, 28 U.S.C. § 991(b)(1), but also with monitoring and evaluating them on an ongoing basis, 28 U.S.C. § 991(b)(2). It must review the guidelines periodically, 28 U.S.C. § 994(*o*), and it may submit amendments to Congress, 28 U.S.C. § 994(p).  Judicial commentary, whether in the form of opinions or views expressed at judicial workshops and conferences, is a primary means for the Commission to obtain feedback and to learn of flaws in the operation of the Guidelines.

As we noted above, crimes such as drunk driving and child neglect present a serious risk of physical harm to a victim and therefore qualify as predicate "crimes of violence" for purposes of the career offender Guideline.  We are concerned by the possibility that a defendant could be deemed a career violent offender on the basis of two such convictions, even when he or she never intended harm, nor was there a substantial risk that he or she would have to use intentional force.[23]  Accepting the Sentenc-ing Commission's ongoing invitation to the judiciary to offer suggestions for revision of the Guidelines, we urge that the Commission reconsider its career offender Guidelines to the extent that they cover such "pure recklessness" crimes.

We are compelled to hold today that the revised definition of "crime of violence" was a proper exercise of the Sentencing Commission's authority and that the language of the Guidelines supports such a broad definition of "crime of violence." But we question the Commission's decision not to follow Congress's suggested definition of "crime of violence" in 18 U.S.C. § 16, and we are concerned that it may have either misread or quietly deviated from the alternative definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B).  Certainly the original and possibly both of the congressional definitions excluded reckless driving, child endangerment, and like crimes, and we doubt that Congress intended to endorse the Commission's current broad definition by acceding to the Commission's amendments of the Guideline.

The term "career offender" implies an ongoing intent to make a living through crime, and it is doubtful that one can make a career out of recklessness.  Moreover, the portions of the career offender provisions not dealing with drug offenses unquestionably grew out of concerns about crimes where intentional use of force is likely, if not necessarily a part of the of-

---

Parson relies chiefly on *United States v. Williams*, 746 F.Supp. 1076 (D.Utah 1990), which found a procedural due process violation where police officers (rather than prosecutors) made decisions to refer for federal prosecution based on no formal policy or articulated criteria.  We doubt that the questionable logic of *Williams* has survived the Tenth Circuit's recent decision in *Andersen*.  At any rate, *Williams* is easily distinguishable on two grounds.  Here there was an explicit referral policy based on objective criteria that check any potential for abuse.  Moreover, federal and Delaware prosecutors (not the police) agreed to the drug investigation referral policy.  Following the sound reasoning of the cases cited above, we hold that the decision to prosecute Parson's drug charges federally fell well within the ambit of prosecutorial discretion.  See also *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (if prosecutor has probable cause to believe that defendant committed a crime, decision whether to prosecute and what offense to charge is generally in his or her discretion).

23.  Fortunately, we are certain that no injustice was done here.  Parson most definitely is a career offender in the lay sense of the term, having led a life of crime most of his adult life, and having been convicted of numerous thefts and drug-related crimes.  Even in the technical sense of the term, this appeal was nonfrivolous only because the government inexplicably elected to advance his reckless endangering conviction as a "crime of violence" rather than one of his convictions for burglary of a dwelling.  See note 1.  Thus, although we fear that the current Guideline could work grave injustice in some cases, we are convinced that Parson himself is receiving his just desserts.

fense. Accordingly, we recommend that the Commission consider a return to the original Guideline definition of "crime of violence," that adopted by Congress in 18 U.S.C. § 16, or else in some other way exclude pure recklessness crimes from the category of predicate crimes for career offender status.

ALITO, Circuit Judge, concurring:

I join the court's opinion. In doing so, I express no view on the meaning of 18 U.S.C. § 924(e)(2)(B)(ii). Nevertheless, I fully agree that the broad definition of a "crime of violence" in U.S.S.G. § 4B1.2(1) merits reexamination by the Sentencing Commission.