UNITED STATES of America, Appellee,

v.

Keithroy JOHN, Appellant.

No. 90–3680.

United States Court of Appeals,
Third Circuit.

Argued April 22, 1991.
Decided June 13, 1991.

Melody M. Walcott (argued), Office of Federal Public Defender, Christiansted, Saint Croix, V.I., for appellant.

Terry M. Halpern, U.S. Atty., James R. Fitzner (argued), Asst. U.S. Atty., Christiansted, Saint Croix, V.I., for appellee.

Before BECKER, SCIRICA and ALITO, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Under the United States Sentencing Guidelines ("Guidelines"), a defendant over the age of 18, who is convicted of a felony that is either a crime of violence or a controlled substance offense, will be subject to sentencing as a career offender if he has at least two prior felony convictions of either a crime of violence or a controlled substance offense. Guidelines § 4B1.1 *et seq.* Defendant Keithroy John, who was convicted of a controlled substance offense in the

District Court of the Virgin Islands, had prior convictions for assault in the third degree, which John concedes to be a crime of violence, and grand larceny under a Virgin Islands statute, which he does not. The statutory elements of grand larceny do not implicate violence but the underlying facts of the offense do. This appeal from the judgment of sentence therefore presents the question whether, in determining the existence *vel non* of a crime of violence as a predicate to career offender status, the sentencing court properly considered the actual facts underlying the predicate conviction, or whether it should have been constrained by the statutory elements of the offense.

We conclude that the district court properly considered the underlying facts, and that it did not err in determining that John was a career offender and in sentencing him accordingly. We therefore will affirm.

## I.

On March 1, 1990, at approximately 8:30 p.m., while John was standing across the street from his home in Estate Mon Bijou, St. Croix, he was observed by Narcotics Strike Force agents engaged in a hand-to-hand drug sale. When the agents approached, John dropped a plastic sandwich bag, some portion of the contents of which he apparently was about to hand to a Mr. Didier in exchange for a twenty-dollar bill. The bag was retrieved and, upon examination, was found to contain seventeen rock-like pieces which ultimately tested positive for the presence of crack cocaine. John entered a plea of not guilty but was convicted by a jury of possession of crack with intent to distribute in violation of 21 U.S. C.A. § 841(a)(1) (West 1981).[1]

The critical issue at the sentencing hearing was John's career offender status, which turned on whether his prior grand larceny conviction qualified as a crime of violence. If he were not a career offender, absent a departure from the Guidelines,

---

1. We note that had John been charged and convicted under a local Virgin Islands statute, rather than the U.S.Code, the Guidelines would not have applied. *See* 18 U.S.C.A. § 3551(a) (West Supp.1991).

John would have been sentenced within a Guidelines range of 63 to 78 months based upon an offense level of 22 and a criminal history category of IV. *See* Guidelines Ch. 5, Part A. However, career offender status required elevation of John's offense level to 32 and his criminal history category to VI, which combination yields a Guidelines sentencing range of 210 to 262 months. *Id.*

The Virgin Islands Code defines grand larceny as "the unlawful taking, ... [of] the personal property of another ... of $100.00 or more in value." *See* V.I.Code Ann. tit. 14, §§ 1081, 1083 (1964). On its face, this definition does not indicate that violence is a necessary element of the offense. However, the presentence investigation report ("PSI") made available to the district court described the underlying conduct for which John had been convicted as follows:

> The defendant, in concert with two co-defendants, entered a home and threatened the occupants with guns. Cash and other personal property was [sic] taken. He entered a guilty plea and was paroled on May 14, 1979. Parole was revoked on

October 10, 1980, following his conviction in Cr. No. 80/21.

John agreed at the sentencing hearing that the PSI was accurate in every respect, including presumably in its description of the circumstances surrounding his grand larceny conviction.

▌ Following the sentencing hearing, at which the career offender issue was the primary focus, the district court concluded that the grand larceny conviction, like the assault conviction, constituted a crime of violence because: (1) larceny is included among those crimes defined as a "crime of violence" under the Control, Firearms, and Ammunition Chapter of Title 23 of the Virgin Islands Code, *see* 23 V.I.Code Ann. tit. 23, § 451(d) (Supp.1990); and (2) the description set forth in the PSI of John's conduct clearly indicated that the grand larceny conviction qualified as a crime of violence. The district court therefore sentenced John as a career offender to a term of 210 months, the bottom of the applicable Guidelines range. This appeal followed, in which the only contention of substance relates to the career offender issue.[2]

---

2. John also contends that the district court committed reversible error in failing to declare a mistrial in connection with the testimony of Didier, the putative buyer of the crack. Didier had denied, when questioned by Narcotics Strike Force agents, that he and John had been engaged in a drug transaction. John summoned Didier to testify to that effect as a defense witness. In proceedings outside of the hearing of the jury, the government suggested to the district court that before Didier testified, he should be advised of his rights and should be furnished with an attorney because he had been arrested and was facing charges in Virgin Islands Territorial Court in connection with the same drug transaction. When the Court inquired of defense counsel: "Do you wish me to do it?," she responded: "Out of an abundance of caution." Didier thereupon was advised of his rights and counsel was appointed to represent him. He then testified, consistent with his pretrial statements, that no drug transaction had ever taken place.

Defense counsel nonetheless moved for a mistrial alleging that the government's suggestion that Didier be apprised of his rights and provided with counsel was merely an attempt to intimidate him prior to his testimony. As evidence of this motive, defense counsel noted that the government had not presented a complaint or

other formal written document to indicate that Didier had in fact been charged in Territorial Court with any crime. The district court denied the mistrial motion. We decline to disturb this exercise of the court's discretion, particularly as John not only failed to object to the government's suggestion, but affirmatively acquiesced to it. John cannot now be heard to complain.

John also argues that the finding that he was a career offender violated the fifth and eighth amendments to the United States Constitution. In essence, John asserts that, in light of the long lapse between his 1976 grand larceny conviction and the instant offense and his youth at the time of the 1976 offense, the severe sentence imposed upon him as a career offender rises to an unconstitutional level of severity. The argument is plainly without merit.

With respect to John's fifth amendment due process claim, Guidelines § 4B1.1 implements Congress's directive to the Sentencing Commission to "assure that [for career offenders] the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized." *See* 28 U.S.C.A. § 994(h) (West Supp. 1991). "The legislative history of this provision suggests that the phrase 'maximum term authorized' should be construed as the maximum term authorized by statute." *See* Background to Guidelines § 4B1.1 (citing S.Rep. 98–225, 98th Cong., 1st Sess. 175 (1983), 128 Cong.Rec. 26,-

## II.

John argues, as he must, that the district court erred *both* in relying on the Virgin Islands Code's definition of grand larceny as a "crime of violence" and in looking through to the actual conduct underlying John's grand larceny conviction, instead of limiting its inquiry to the statutory elements of the offense, to determine whether the crime involved violence. We consider only John's latter claim in detail here, as the former is clearly correct. *See infra* n. 4.

The term "crime of violence," which is the essential element of career offender status at issue, is defined under the Guidelines as follows:

The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

Guidelines § 4B1.2(1) (emphasis added).

The Application Notes to this section restate this definition, and clarify it somewhat, as follows:

"Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) *the conduct set forth in the count of which the defendant was convicted involved use of explosives or, by its nature, presented a serious potential risk of physical injury to another.*

Application Note 2 to Guidelines § 4B1.2 (emphasis added).

We think it plain from these passages that the Sentencing Commission essentially envisioned three *independent* ways by which a prior conviction will be considered a "crime of violence": (1) the prior conviction is for a crime that is among those specifically enumerated (murder, manslaughter, kidnapping, etc.); (2) the prior conviction is for a crime that, although not specifically enumerated, has as an element of the offense the use, attempted use, or threatened use of physical force; or (3) the prior conviction is for a crime that, although neither specifically enumerated nor involving physical force as an element of the offense, involves conduct posing a serious potential risk of physical injury to another.

Obviously, and consistent with John's argument, it is not only impermissible, but pointless, for the court to look through to the defendant's actual criminal conduct under the first two prongs. All that the court needs to know can be gleaned from the fact of conviction and the charging paper. *See United States v. McAllister,* 927 F.2d 136, 139 (3d Cir.1991), discussed *infra* at 770. However, in our

511–12 (1982) (text of "Career Criminals" amendment by Senator Kennedy), 26,515 (brief summary of amendment), 26,517–18 (statement of Senator Kennedy)). The sentence imposed on John was 2 years less than the statutory maximum on this one-count indictment. *See* 21 U.S.C.A. § 841(b)(1)(C) (West Supp.1991). At all events, the career offender legislation scheme bears a rational relationship to a legitimate governmental purpose—to prevent repeat offenders from continuing to victimize society— hence it easily survives due process challenge. Other similar schemes have also easily survived due process challenge. *See, e.g., United States v. Hawkins,* 811 F.2d 210, 217 (3d Cir.1987) (sentencing enhancement scheme in the Armed Ca-

reer Criminal amendment to 18 U.S.C.App. § 1202(a) held constitutional; *see also United States v. Frank,* 864 F.2d 992, 1009–10 (3d Cir. 1988) (defendant does not have a substantive due process right to individualized treatment at sentencing).

Turning to John's eighth amendment challenge, we need only point out that the sentence imposed is nowhere near as severe as other sentences that have survived eighth amendment challenge. *See, e.g., Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (upholding mandatory life sentence for conviction of obtaining $120.75 by false pretenses after two previous convictions for similar minor felonies).

view, the third prong quite clearly permits the court to examine the defendant's actual conduct to ascertain whether that conduct posed a sufficient potential risk of physical injury to another to elevate the crime to a "crime of violence."

This insight is not novel. Indeed, we already have interpreted § 4B1.2 as permitting a court to look through to the defendant's underlying conduct in determining whether a prior conviction constitutes a "crime of violence." *See United States v. Williams*, 892 F.2d 296, 304 (3d Cir.1989) *cert. denied*, 110 S.Ct. 3221 (1990).[3] The other courts of appeals to consider the issue are in accord. *See United States v. Goodman*, 914 F.2d 696, 699 (5th Cir.1990); *United States v. Terry*, 900 F.2d 1039, 1041–43 (7th Cir.1990); *United States v. Baskin*, 886 F.2d 383, 389 (D.C.Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990).

John argues that even if this interpretation once may have appeared correct, a different result is now compelled by the decision of the United States Supreme Court in *Taylor v. United States*, —— U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), which was decided after *Williams*, *Terry*, and *Baskin*, and, although preceding *Goodman*, was not discussed by the Fifth Circuit in that opinion. We disagree. To the contrary, we believe *Taylor* is fully consistent with these decisions.

*Taylor* arose under the sentencing enhancement provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C.A. § 924(e) (West Supp.1991). ACCA generally prohibits certain persons, including convicted felons, from transporting, receiving, or possessing firearms or ammunition. *Id.* § 922(g). ACCA further provides that any person who violates this prohibition, and who has three previous convictions for a "violent felony or serious drug offense," is subject to a sentencing enhancement requiring a minimum period of incarceration of fifteen years. *Id.* at § 924(e)(1). For this purpose "violent felony" is defined, nearly identically to "crime of violence" under Guidelines § 4B1.2, as follows:

> (B) [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) *is burglary*, arson, or extortion, involves use of explosives, or otherwise involved conduct that presents a serious potential risk of physical injury to another.

*Id.* § 924(e)(2)(B) (emphasis added).

In *Taylor*, the Court was called upon to interpret this language in relation to a defendant one of whose three predicate convictions for sentencing enhancement purposes had been for *second-degree burglary* under Missouri law. The government had successfully argued before the Eighth Circuit that "burglary in § 924(e)(2)(B)(ii) means burglary however a state chooses to define it, [and thus] the district Court did

---

**3.** *Williams* was decided by reference to the text of and Application Notes to § 4B1.2 as they existed prior to the amendment to the section that became effective November 1, 1989. Of relevance to the instant matter, this amendment added current Application Note 2, *see supra* at 767, and deleted then Application Note 1, which read as follows:

> "Crime of violence" is defined in 18 U.S.C. § 16 to mean an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or any other offense that is a felony and that by its nature involves a substantial risk that physical force against the person or property of another may be used in committing the offense. The Commission interprets this as follows: murder, manslaughter, kidnapping, aggravated assault, extortion-

ate extension of credit, forcible sex offenses, arson, or robbery are covered by this provision. *Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.*

Application Note 1 to Guidelines § 4B1.2 (1988) (emphasis added). The clarification of the definition of "crime of violence" effected by the recent amendment reinforces our conclusion in *Williams* that a court is permitted where necessary to look through to the defendant's underlying conduct.

not err in using Taylor's Missouri convictions for second-degree burglary to enhance his sentence." *Taylor*, 110 S.Ct. at 2148 (citations omitted). After an exhaustive review of the legislative history, the Supreme Court reversed. The Court concluded that the reference to "burglary" in § 924(e)(2)(B)(ii) was not intended by Congress to encompass any crime labelled a "burglary" under state law, but rather only crimes fitting the generic common law definition of "burglary"—i.e., "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 2158.

Having reached this conclusion, the Court recognized that it was then faced with "the problem of applying this conclusion to cases [such as Taylor's] in which the state statute under which a defendant is convicted varies from the generic definition of 'burglary.'" *Id.* The Court then framed this "problem" as follows:

> We therefore must address the question whether, in the case of a defendant who has been convicted under a nongeneric-burglary statute, the Government may seek enhancement on the grounds that he actually committed a generic burglary.
>
> This question requires us to address a more general issue—whether the sentencing court in applying § 924(e) must look only to the statutory definitions of the prior offense, or whether the court may consider other evidence concerning the defendant's prior crimes.

*Id.* at 2159 (footnotes omitted). Thus framed, and in light of the parallel definitions of "crime of violence" and "violent crime" employed in Guidelines § 4B1.2 and 18 U.S.C.A. § 924(e)(2)(B), the Court's inquiry appears at first blush to mirror that before us in the instant dispute.

The Court concluded that, *in determining what offenses constitute "burglaries" for enhancement purposes*, the sentencing court generally must adopt a formal categorical approach, looking only to the fact of conviction and the statutory definition of the predicate offense, rather than to the particular underlying facts. That approach is required, the Court reasoned, because: (1) when read in context, the phrase "is burglary" in § 924(e)(2)(B)(ii), *see supra* at 768, most likely refers to the statutory elements of the offense rather than to the facts of the defendant's conduct; (2) the legislative history itself reveals a general categorical approach to predicate offenses; and (3) an elaborate factfinding process regarding the defendant's prior offenses would be impracticable and unfair. This holding does appear to support John's contention that the Court has rejected a case-by-case inquiry, for sentencing enhancement purposes, into the conduct underlying the defendant's prior convictions.

Such a broad gloss misreads, however, the scope of the Court's holding by ignoring the following critical language:

> Our present concern is only to determine what offenses should count as "burglaries" for enhancement purposes. The Government remains free to argue that any offense—including offenses similar to generic burglary—should count towards enhancement as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another" under § 924(e)(2)(B)(ii).

*Taylor*, 110 S.Ct. at 2159 n. 9.

In our view, the import and relevance of this language are inescapable. Section 924(e)(2)(B)(ii), like Guidelines § 4B1.2, generally permits three approaches to classifying a prior conviction as a "violent felony" or a "crime of violence." *See supra* at 767. The sum and substance of *Taylor* is that for purposes of what we have called the first prong—i.e., crimes specifically enumerated—the government may not attempt to prove by reference to actual conduct that a prior conviction constitutes a "violent felony" when the crime for which the defendant was convicted does not conform to the generic, common law definition. Hence, the government may not prove by reference to actual conduct that Taylor, having been convicted of "second-degree burglary," actually committed "burglary"

in order to satisfy the first prong. In the Court's view, such an approach would circumvent Congress's intent that the correspondence between a defendant's prior conviction and a crime enumerated in § 924(e)(2)(B) be determined solely by reference to their statutory elements. However, as footnote nine plainly states, the government is always free to prove by reference to actual conduct that a prior conviction satisfies the third prong—to wit, that it "involves conduct that presents a serious potential risk of physical injury to another."

We are therefore satisfied that *Taylor* does not undermine our *Williams* decision, and indeed supports it. Consistent with *Williams* and with the law of other circuits, *see supra* at 767–68, we hold that a sentencing court may inquire into the conduct underlying a prior conviction to ascertain whether it "presents a serious potential risk of physical injury to another" and thus qualifies as a "crime of violence" under Guidelines § 4B1.2.

This conclusion is unaffected by our recent decision in *United States v. McAllister*, 927 F.2d 136 (3d Cir.1991), where we reversed the judgment of sentence of the district court which had declined to treat defendant as a career offender despite his convictions of robbery on the ground that the facts surrounding the convictions were:

> "sufficiently ambiguous to the Court that I cannot say that both of those crimes were crimes of violence as those words are used in the guidelines applicable to career offenders."

*McAllister*, 927 F.2d at 137–38 (quoting district court's remarks at sentencing hearing).

On appeal, we held that where the predicate offense is expressly listed as a crime of violence, as "robbery" is, *see* Application Note 2 to Guidelines § 4B1.2, *supra* at 767, a more detailed inquiry into the facts is inappropriate. Larceny is not so listed. The *McAllister* panel hastened to add, moreover:

We do not suggest that it will always be possible to take a categorical approach to the determination of whether an underlying offense is a "crime of violence" within guidelines § 4B1.2. *It may well be that more detailed inquiry into the facts of a case will be required if the offense is not specifically listed as a "crime of violence" in the application notes to the guidelines. See United States v. Williams*, 892 F.2d 296, 303–04 (3d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990). But we are not concerned with that situation and thus we do not address it. Here the robberies were *per se* crimes of violence and that ends our inquiry. *See also United States v. Gonzalez–Lopez*, 911 F.2d 542, 547–48 (11th Cir.1990); *United States v. Brunson*, 907 F.2d 117, 120–21 (10th Cir.1990).

*McAllister*, 927 F.2d at 139 (emphasis added).

### III.

 As noted above, the Virgin Islands Code defines grand larceny as "the unlawful taking, ... [of] the personal property of another ... of $100.00 or more in value." *See* V.I.Code Ann. tit. 14, § 1081, 1083 (1964). The definition does not refer to any use or attempted use of violence and thus does not satisfy Guidelines § 4B1.2(1).

In the predicate charge in question, however, the record reflects that the defendant was charged with entering a home with two other individuals and, acting in concert with them, in threatening the occupants with guns and taking cash totalling $40.00, two cameras, and one camera lens. *Government of the Virgin Islands v. Keithroy John*, Crim. No. 76–147 (D.C.V.I. 1976); *Government of the Virgin Islands v. Keithroy John*, JDR 157–159/76 (Territorial Ct. V.I.). These facts are admitted.

If we were limited to consideration of the elements of the offense of conviction, we could not treat the grand larceny conviction as a predicate offense for career criminal status.[4] However, inasmuch as we have

---

4. As noted above, the district court observed, in connection with its decision that grand larceny

was a crime of violence, the fact that grand larceny is classified as a crime of violence in a

held that we may look to the facts underlying the conviction, and the facts here reveal that the defendant and his confederates entered a house and threatened the occupants with guns in connection with the larceny, there can be no doubt that John's crime involved conduct that presented a serious potential risk of physical injury to another and thus constitutes a "crime of violence" under Guidelines § 4B1.2(1)(ii). At the least, the finding of the district court to that effect is entitled to deference. 18 U.S.C.A. § 3742(e) (West Supp.1991). Therefore, since the defendant was properly treated as a career offender, the judgment of sentence will be affirmed.

Virgin Islands firearms statute. *See supra* at 766. However, we cannot rest our decision on any such statute since the Guidelines themselves, *see supra* at 767, make the determination solely turn on either the existence of certain enumerated predicate offenses of which larceny is not one, on the existence of certain elements in the predicate offense, or on whether the underlying conduct presented a substantial risk of harm to another. State or territorial definitions concerning the violent nature of particular crimes are irrelevant to this analysis.