**UNITED STATES of America**

**v.**

**Clarence GLENN.**

**Crim. A. No. 91–614.**

United States District Court, E.D. Pennsylvania.

Aug. 28, 1992.

**1042**

George D. Mosee, Jr., Sp. Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Leigh M. Skipper, Defender Ass'n of Philadelphia, Philadelphia, Pa., for defendant.

## MEMORANDUM

BARTLE, District Judge.

The issue here presented is whether defendant's July 9, 1979 guilty plea to rob-

1. 18 U.S.C. § 922(g)(1) provides, in pertinent part, that
   [i]t shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate ... commerce.

2. 18 U.S.C. § 924(e)(1) provides, in pertinent part, that:
   In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on

bery in the Court of Common Pleas of Philadelphia County was intelligent and voluntary and, if not, whether this Court may consider that conviction in determining the defendant's status as an armed career criminal for sentencing purposes. The Court must also determine whether defendant is a career offender under the Sentencing Guidelines if he is not an armed career criminal.

On February 4, 1992, a jury of this Court found defendant Clarence Glenn guilty, as a prior felon, of possessing a firearm in violation of 18 U.S.C. § 922(g)(1).[1] Following defendant's conviction, the Government moved to enhance his sentence. This motion was made pursuant to 18 U.S.C. § 924(e) which provides that a defendant convicted of violating 18 U.S.C. § 922(g)(1), who has three prior convictions for specified violent felonies or serious drug offenses, faces a minimum term of 15 years of imprisonment.[2]

The three prior violent felony convictions upon which the Government relies in seeking defendant's designation as an armed career criminal are the following: (1) an April 22, 1979, forcible robbery as to which defendant pleaded guilty on July 9, 1979, in the Court of Common Pleas of Philadelphia County (C.P. 79-04-2239); (2) a November 1, 1979, strong arm robbery as to which defendant was found guilty on August 26, 1980, in the Court of Common Pleas of Philadelphia County (C.P. 79-11-857); and (3) a January 21, 1982, aggravated assault as to which defendant was found guilty on

occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years ...
18 U.S.C. § 924(e)(2)(B)(i) defines the term "violent felony":
   (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
      (i) has an element the use, attempted use, or threatened use of physical force against the person of another; or ...
18 U.S.C. § 924(e)(2)(B).

June 17, 1982, also in the Court of Common Pleas of Philadelphia County (C.P. 82–02–2322, 2323 and 2329).[3]

Section 4B1.4 of the November 1, 1990 Sentencing Guidelines Manual, applicable here, mandates an offense level of 33 where a defendant is designated as an armed career criminal under 18 U.S.C. § 924(e). Additionally, because of the defendant's extensive criminal record, the Probation Department has determined that defendant's Criminal History Category under the Sentencing Guidelines is VI.[4] Based on that combination the applicable guideline imprisonment range is 235 to 293 months. Thus, if Glenn is appropriately designated an armed career criminal under § 924(e), he faces a statutory mandatory minimum prison sentence of 15 years and a minimum guideline sentence of more than 19 years of imprisonment.

Defendant first challenges his designation as an armed career criminal. He contends that the forcible robbery conviction should not be counted since it resulted from his invalid guilty plea on July 9, 1979 before Judge Thomas N. Shiomos (C.P. 79–04–2239). If this conviction is not available for sentencing enhancement purposes, de-

fendant's designation as an armed career criminal fails because of the lack of three prior convictions for violent felonies as required under 18 U.S.C. § 924(e)(1).

Defendant has a right to a hearing on any contested issues of fact in the presentence investigation report. Due process guarantees a convicted criminal defendant the right not to have his sentence based upon "materially inaccurate" information. *See Johnson v. Mississippi,* 486 U.S. 578, 590, 108 S.Ct. 1981, 1989, 100 L.Ed.2d 575 (1988). The presentence report serves as a prima facie showing of fact. If a defendant challenges any fact contained in the report, he has the burden of coming forward with evidence that tends to indicate that the report is incomplete or incorrect. Once a defendant has done so, the Government has the burden of ultimate persuasion by a preponderance of the evidence if it is attempting, as here, to adjust upward defendant's sentence on the ground that he is an armed career criminal. *United States v. McDowell,* 888 F.2d 285, 290–91 (3d Cir.1989); *United States v. Hope,* 906 F.2d 254 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991).[5]

3. Under the Pennsylvania Crimes Code all grades of robbery are (and were at the times pertinent in this case) punishable by imprisonment for a term exceeding one year, as is required by 18 U.S.C. § 924(e)(2)(B). *See* 18 Pa. Cons.Stat.Ann. §§ 106(b) and 3701(b).

4. According to the Presentence Report, defendant was convicted as an adult of five additional crimes besides the three crimes of violence noted above: (1) a December 2, 1978, theft as to which defendant pleaded guilty in the Philadelphia Court of Common Pleas on July 9, 1979 (M.C. 78–11–2944; 0 criminal history points assigned because sentence was imposed more than ten years before defendant's commission of the current offense); (2) a December 6, 1978 theft and receiving stolen property as to which defendant pleaded guilty in the Philadelphia Court of Common Pleas on February 16, 1979 (C.P. 78–12–815; 3 criminal history points assigned); (3) a January 2, 1979, theft and receiving stolen property as to which defendant pleaded guilty in the Philadelphia Court of Common Pleas on February 16, 1979 (M.C. 79–01–156; 0 criminal history points assigned because sentence was imposed more than ten years before defendant's commission of the current offense); (4) an April 3, 1979, attempted theft as to which

defendant pleaded guilty in the Philadelphia Court of Common Pleas on July 9, 1979 (M.C. 79–04–200; 0 criminal history points assigned because sentence was imposed more than ten years before defendant's commission of the current offense); and (5) a November 27, 1990 firearms violation as to which defendant was found guilty in the Philadelphia Court of Common Pleas on January 13, 1992 (C.P. 90–11–2417; 3 criminal history points assigned).

Defendant's Criminal History Category under the guidelines was set by the Probation Department at VI. This categorization was based on the 15 points assigned as a result of defendant's five previous criminal convictions plus three additional points because defendant committed the present offense while on parole in Pennsylvania and less than two years after his release from a term of imprisonment. United States Sentencing Commission, *Guidelines Manual,* § 4A1.1 (Nov.1990).

5. Some courts in other circuits put the burden of proof on the defendant. *See United States v. Unger,* 915 F.2d 759 (1st Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991); *United States v. Bradley,* 922 F.2d 1290 (6th Cir.1991).

■ In this case, defendant has come forward with the transcript of the July 9, 1979 guilty plea colloquy in the Court of Common Pleas of Philadelphia County before Judge Thomas Shiomos to vitiate his conviction for robbery. After asking defendant his age and questions about his educational and medical history, Judge Shiomos advised him that he would forego his right to a jury trial if he entered a plea of guilty to the robbery in issue. The Court explained that the Commonwealth would have to prove every element of the crime beyond a reasonable doubt, that he would give up his right to cross-examine witnesses and to put witnesses on the stand, and would also forego his general right of appeal if he entered a plea of guilty. The defendant, in response to the Court's inquiries, stated that he had not been promised anything or threatened in any way to enter a guilty plea. The defendant also stated to the Court that he had had ample opportunity to discuss his case with his attorney and was satisfied with his representation. The Court advised him that he faced a possible sentence of 3½ to 7 years imprisonment for robbery. At the conclusion of the guilty plea colloquy, the Court sentenced him on the robbery charge to 6 to 23 months with credit for time served.

Although the Common Pleas Court made defendant aware of certain rights, the defendant contends that the Court failed to advise him of his right against self-incrimination, his right to remain silent, his right to counsel, the presumption of innocence, and the elements of the offense to which he was pleading guilty. Since the defendant has met its burden of coming forward with evidence to invalidate that conviction, the burden is on the Government to prove the propriety of that guilty plea.

■ If a defendant did not enter an intelligent and voluntary guilty plea to robbery in July, 1979, his conviction for that offense cannot be used in calculating whether he is an armed career criminal under the Sentencing Guidelines. *See United States v. Ferguson,* 935 F.2d 862, 866 (7th Cir.

1991), *cert. denied,* — U.S. —, 112 S.Ct. 907, 116 L.Ed.2d 807 (1992). Otherwise, the Court would be enhancing his sentence based on an unconstitutional conviction. Such a result is not permissible. *United States v. Brown,* 899 F.2d 677 (7th Cir. 1990); *see Burgett v. State of Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967).

We must therefore determine whether defendant's 1979 guilty plea was intelligent and voluntary. In order to have a constitutional waiver, defendant must at least be made aware of certain fundamental rights to which he is entitled if he should decide to stand trial. Among these are his privilege against self-incrimination,[6] his right to a jury trial, and his right to confront his accusers. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). While the state court judge explained to defendant certain of his rights before accepting the guilty plea, he did not advise him of his right against self-incrimination—one of the three specific rights to which the Supreme Court referred in *Boykin v. Alabama, supra,* in determining whether a guilty plea was voluntary and knowing. The failure to mention this critical right, in the context of this case, is fatal to the validity of the guilty plea. The right against self-incrimination is a separate and distinct right apart from all others. That constitutional right prevents the Government from compelling the defendant to testify against his will. The Government may not prove its case out of the mouth of the defendant from his involuntary appearance on the witness stand. *See, Ullmann v. United States,* 350 U.S. 422, 428, 76 S.Ct. 497, 501, 100 L.Ed. 511 (1956); *United States v. White,* 322 U.S. 694, 698, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944). The defendant is also entitled to know, as part of his right to remain silent, that the jury may not draw an inference of guilt from his failure to testify. *Cf. Griffin v. California,* 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). Contrary to the position of the Government, the fact that

**6.** The Fifth Amendment to the Constitution provides: "No person shall ... be compelled in any criminal case to be a witness against himself...."

the Court advised defendant of the Government's burden of proof beyond a reasonable doubt, and of certain other rights, cannot be deemed imparting to him knowledge of the separate right against compelled testimony. *Cf. Gonzales v. Grammer,* 655 F.Supp. 1147 (D.Neb.1987), *aff'd,* 848 F.2d 894 (8th Cir.1988).

The Government relies on a February 16, 1979 guilty plea colloquy with defendant before the same Judge Shiomos in support of its position that defendant's July, 1979 guilty plea was voluntary and knowing. Concedingly, on the earlier occasion, Judge Shiomos advised him of his right to remain silent. The Government argues that because defendant was advised of this right some five months earlier, he was aware of it on July 9, 1979 even though not mentioned by Judge Shiomos at that time. The Government's position is not persuasive for a number of reasons. A stale colloquy will not pass muster. It is the Court's responsibility to make thorough inquiry at the time of any guilty plea to satisfy itself that defendant, unlearned in the law, is giving up knowingly and voluntarily certain valuable constitutional rights. We cannot find that this defendant's plea was intelligent and voluntary when he did not have fresh in his mind all the critical factors necessary to make such an important decision.

Even if, however, the defendant could be deemed to have remembered in detail the February, 1979 colloquy when he was advised of his right against self-incrimination, it does not follow that he knew in July, 1979 that he still had such a constitutional right. It is just as likely, if not more likely, that defendant would conclude from the judge's failure to mention that right in July that the right no longer existed. Moreover, it would be anomalous, indeed, to hold a 19 year old defendant with less than a full high school education to have remembered the right in July, 1979 when the Judge himself, learned in the law, did not remember to mention it to defendant on that occasion.

We also reject the Government's request that we assume his July, 1979 counsel, Jay Smith, Esquire, now deceased, told him about his right to remain silent. That would be pure speculation. The Government, not the defendant, has the burden of proof by a preponderance of the evidence that defendant's plea was knowing and voluntary.

Finally, the Government attempts to argue that defendant's counsel in June, 1979, Barnaby Wittels, Esquire, had a practice of advising his clients of their panoply of constitutional rights. Even assuming such a June, 1979 discussion would convince the Court that defendant's July 9, 1979 guilty plea was intelligent and voluntary, there is no evidence in the record to this effect. Mr. Wittels did not testify, and defense counsel would not stipulate to the facts asserted by the Government.

Under the totality of the circumstances including the defendant's age at the time, his education, the time lapse between colloquies, and the Court's general observation of defendant at trial and at this hearing, the Court concludes that the Government has not proved by a preponderance of the evidence that defendant's guilty plea for robbery in July, 1979 was knowing and voluntary as required by the Constitution. *See, United States v. McDowell,* 888 F.2d at 290–91.

Accordingly, such a conviction may not be counted in determining whether defendant is an armed career criminal for sentencing purposes. Since defendant does not have three prior violent felony convictions, he cannot be deemed an armed career criminal under 18 U.S.C. § 924(e).

We must now determine whether defendant is a "career offender" under § 4B1.1 of the Guidelines. Under this provision, a defendant meets the criteria if

(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Glenn was over 18 at the time of the instant offense, and he has

two prior felony convictions, for robbery and aggravated assault. Therefore, the issue confronting us is whether the instant crime, possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1), is a "crime of violence" under the Sentencing Guidelines.[7]

A "crime of violence" is

> any offense ... punishable by imprisonment for a term exceeding one year that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another.* [Emphasis added]

U.S.S.G. § 4B1.2. The Application Notes to this section restate and clarify the definition:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included where (A) that offense has an element of the use, attempted use, or threatened use of physical force against the person of another, or (B) *the conduct set forth in the count of which the defendant was convicted* involved use of explosives or, *by its nature, presented a serious potential risk of physical injury to another.*

Application Note 2 to Guidelines § 4B1.2.[8] The statute under which defendant was convicted, 18 U.S.C. § 922(g), does not have as an element the use, attempted use, or threatened use of force, nor is it one of those offenses explicitly listed in § 4B1.2 (1)(ii). In order for Glenn to be classified as a career offender under the 1990 Guidelines, the Court must determine that his offense "involves conduct that presents a serious potential risk of physical injury to another."

In determining whether the defendant's criminal conduct is specifically enumerated in the Guidelines or is conduct which has as an element, the use, attempted use, or threatened use of physical force, a court merely needs to look to the fact of the conviction and the charging papers. *See United States v. McAllister*, 927 F.2d 136, 139 (3d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991).[9] When the crime is neither one specifically enumerated in the Guidelines nor one for which an element is the use or attempted or threatened use of physical force, the Court of Appeals of this Circuit permits the sentencing court to examine the defendant's actual conduct to ascertain whether that conduct posed a sufficient potential risk of physical injury to another to elevate the crime to a "crime of violence." *United States v. John*, 936 F.2d 764, 768 (3d Cir.

---

**7.** If defendant is found to be a career offender under the sentencing guidelines, his offense level would be 24, under § 2K2.1, and his criminal history category would be Category VI, § 4B1.1, because 18 U.S.C. § 922(g) has an offense statutory maximum sentence of 10 years. He would be subject to 100–125 months of imprisonment. If he is not a career offender, he would be subject only to an offense level of 12 under § 2K2.1 of the 1990 Sentencing Guidelines. With a criminal history category of VI, the defendant would be subject to 30–37 months imprisonment. Under the amended 1991 Guidelines, even if not found to be a career offender, defendant would be subject to an offense level of 24 under § 2K2.1. While under 18 U.S.C. § 3553(a)(5), sentencing courts are supposed to apply the guidelines in effect at the time of the sentencing, rather than at the time of the offense, the Court is not to apply the amended Guideline where it would subject the defendant to an increased sentence. *See U.S. v. McAllister,*

927 F.2d 136, 138 n. 2 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991). Because defendant is subject to a harsher sentence under § 2K2.1 of the 1991 Guidelines, we apply the 1990 Guidelines and commentary.

**8.** Under the 1991 Sentencing Guidelines, the Commentary specifically provides that the "term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon." U.S.S.G. § 4B1.2, comment (n. 2). However, we are not applying the 1991 Sentencing Guidelines to the "career offender" issue. *See* note 6, *supra.*

**9.** This is considered a "categorical examination" of the offense of conviction and has been applied by a number of courts. *See; e.g., United States v. Richard Harmon Bell,* 966 F.2d 703 (1st Cir.1992) (felon in possession charge); *United States v. Parson,* 955 F.2d 858, 872 (3d Cir.1992) (reckless endangering as a "crime of violence").

1991).[10] Here, immediately prior to defendant's arrest on August 16, 1991, he had a loaded .357 Taurus revolver in his hand.

In several cases involving sentences handed down prior to the 1991 amendments to the Commentary to Guideline § 4B1.2, courts have held that on the particular facts of those cases, the underlying conduct of the felons in possession made the possession a "crime of violence." Where a defendant was armed with a rifle and was heading back to the scene of a scuffle prepared to use it, the Fifth Circuit found the defendant's conduct to be a "crime of violence." *United States v. Goodman*, 914 F.2d 696, 699 (5th Cir.1990).[11] In *United States v. Chapple*, 942 F.2d 439, 441 (7th Cir.1991), the Seventh Circuit found that possession plus some overt act implying its use was needed for the possession to be a "crime of violence." In another Seventh Circuit decision, being a felon in possession was a crime of violence where the evidence existed that the gun was fired. *United States v. McNeal*, 900 F.2d 119, 123 (7th Cir.1990).[12]

In *United States v. Williams*, the Court of Appeals for the Third Circuit held, under pre–1989 amendments to the Guidelines, that possessing a gun while firing it is a crime of violence; possession without firing the weapon is not. *United States v. Williams*, 892 F.2d 296, 304 (3d Cir.1989), *cert. denied*, 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990).[13] Although that decision was made applying pre–1989 language, both the 1989 amendments applicable here and the pre–1989 language indicate that a crime of violence requires conduct involving a substantial risk that physical force may be used against a person. Although the *Williams* decision held that mere possession was not a crime of violence, the Court there did not consider degrees of conduct between mere possession and actual firing. The defendant's conduct here, as described in the presentence report, went beyond mere possession. The defendant was on a public street and had the loaded revolver in his hand immediately prior to his arrest. While he did not shoot the weapon, it was displayed. The line between mere passive possession and overt action is a fine one. Any overt action by a defendant "pointing a weapon, displaying a weapon, brandishing a weapon, holding a weapon, gesturing towards a weapon, or any act other than mere passive posses-

**10.** Several courts have held that the commentary language "conduct set forth in the count of which defendant was convicted" indicates that courts are not to look beyond the conduct specifically described in the indictment. *See* U.S.S.G. § 4B1.2, application note 2; *United States v. Fitzhugh*, 954 F.2d 253, 254 (5th Cir. 1992); *United States v. Leavitt*, 925 F.2d 516, 517 (1st Cir.1991); *United States v. Johnson*, 953 F.2d 110, 113–114 (4th Cir.1991). In fact, the commentary to the Guidelines was amended effective November 1, 1991 and now reads "Other offenses are included where ... (B) conduct set forth (i.e. expressly charged) in the count of which the defendant was convicted...." Guideline § 4B1.2, application note 2. Again, however, we are not applying the 1991 Guidelines.

**11.** This decision was abrogated by *United States v. Fitzhugh*, 954 F.2d 253 (5th Cir.1992) where the court found that only facts in the indictment can be considered in determining whether the conduct was a "crime of violence."

**12.** In several cases, courts have determined that being a felon in possession is *per se* not a crime of violence. *United States v. Shano*, 955 F.2d 291, 295 (5th Cir.1992), *cert. denied*, —— U.S.

——, 112 S.Ct. 1520, 118 L.Ed.2d 201 (1992); *United States v. Briggman*, 931 F.2d 705, 710 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991). Other courts have held that being a felon in possession is *per se* a crime of violence. *United States v. O'Neal*, 937 F.2d 1369, 1375 (9th Cir.1990).

**13.** Pre–1989 amendments, the application note to § 4B1.2 provided:

"Crime of violence" [means] an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or any other offense that is a felony and that by its nature involves a substantial risk that physical force against the person or property of another may be used in committing the offense. [Covered by this provision are] murder, manslaughter, kidnapping, aggravated assault, extortionate extension of credit, forcible sex offenses, arson or robbery ... Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition....

U.S.S.G. § 4B1.2 commentary (n. 1) (effective Jan. 15, 1988).

sion" crosses the line and presents a sufficient potential for physical injury to constitute a crime of violence. *United States v. Chapple*, 942 F.2d 439, 443 (7th Cir.1991).[14] Defendant's displaying of the weapon crossed that line. Holding the weapon in his hand in public view was a provocative act and imported a willingness to fire the gun. This poses a serious potential risk of physical injury to another. We hold that the defendant's possession of a weapon, under the facts here, constitutes a crime of violence under § 4B1.2, and that his is a "career offender" under § 4B1.1 of the Sentencing Guidelines.

Finally, defendant contends that his guilty pleas for certain thefts were not intelligent and voluntary. He seeks to have this Court disregard these convictions as well as his invalid 1979 robbery conviction for purposes of sentence enhancement as a "career offender." It is unnecessary for the Court to decide this issue since § 4B1.1 of the Guidelines places him in Criminal History Category VI regardless. Section 4B1.1 provides, "a career offender's criminal history category in every case shall be Category VI."

 The proper offense level for defendant Clarence Glenn under the November 1, 1990 Sentencing Guidelines is 24. The appropriate Criminal History Category is VI. This matrix provides for a sentence of between 100 and 125 months.

Taking into consideration the crime for which he was convicted here and the nature and number of his prior uncontested convictions, the Court commits the defendant Clarence Glenn into the custody of the Attorney General of the United States for a period of imprisonment of 120 months. Defendant is a recidivist and the ends of justice require a sentence of this magnitude. The Court imposes 5 years of supervised release after completion of his sentence as well as a $50 special assessment. No fine will be required due to defendant's inability to pay.

An appropriate judgment will be entered.

---

14. In *Chapple,* one of defendants prior felony convictions was for being a felon in possession. There, the defendant was in a cab with a gun tucked into the waistband of his pants. The gun was neither displayed nor brandished, and the court found it to be a "passive case" such that the conduct was not a "crime of violence." *Chapple,* 942 F.2d at 442.